JOHN C. THOMPSON & JOHN W. MARTIN *vs.* THOS. B. CHILDRESS & T. O. HARRIS.

October Term, 1873.

TRUSTEE—COMPENSATION FOR PROFESSIONAL SERVICES.—A trustee, who is also a solicitor or attorney, will, in this state, be allowed compensation for professional services, as such, in matters touching the trust estate.

TRUSTEE—ACCOUNTS.—The proper mode of taking the account of a trustee, unless the court order otherwise, is to treat the income of the current year as unproductive, charging against it all the disbursements of the year, including the trustee's compensation, and to strike a balance, upon which, as a general rule, interest should be allowed, but in such way as not to compound it.

TRUSTEE—SALE OF NOTES.—If the trustee sell negotiable paper, received for trust property sold, at a heavy discount, the burden is upon him to show that the sacrifice was demanded by the exigencies of the trust.

24

TRUSTEE—RENTS.—A trustee, under a general assignment for the benefit of creditors, which authorizes him on default to take possession and sell the realty conveyed, is liable only for such rents of the realty as he may have received, or by actual interference with the realty made himself liable for.

TRUSTEE'S BOND, WHO MAY SUE ON.—The bond of a trustee for creditors is required by law to be conditioned to "faithfully perform all the duties imposed upon him by law and the terms of the trust deed." *Held*, that the grantor could not sue upon this bond without averring and showing that the trustee is chargeable with a surplus of assets after the payment of the debts secured and all the expenses of the trust, and that a new trustee could not sue at all.

TRUSTEE, CONSENT OF TO DECREE FOR ACCOUNT.—A trustee, who, upon a bill filed by the grantor and the new trustee, consents to the taking of the trust account by decree of record, is bound for the amount found, but is entitled to be protected from liability to the trust beneficiaries by having the amount recovered applied to the satisfaction of the trust debts, and in the order of their priority, and the court will impound the fund for this purpose. [See note at end of case.]

*James L. Rice*, for complainants.

*J. C. & J. M. Gaut*, for defendants.

THE CHANCELLOR.—On the 17th of December, 1860, the complainant, John W. Martin, conveyed to the defendant, Thos. B. Childress, certain real and personal property, choses in action, etc., in trust to secure preferred creditors named, in the first place, and then "any and all other debts that I may justly owe, equally and without preference or priority." The uses and trusts as set out in the deed are: "That said Childress is to sell and dispose of all the lands and tenements and personal property above mentioned, or so much thereof as may be necessary for the purposes hereinafter mentioned and set forth, either for cash or on a reasonable credit, and at private or public sale as to him shall seem best, and to collect and receive all the outstanding debts and claims above mentioned, and with the moneys arising therefrom, as well as from the sale of the lands and personal property mentioned in the conveyance, after first deducting his reasonable expenses and charges, together with all other expenses of executing and carrying out the powers and objects of the trust or conveyance, first to pay and discharge the following debts in the order of priority in which they are here placed or mentioned, viz.," etc. The deed gave the trustee power to mortgage any of the trust property for trust

purposes. This deed was acknowledged by the grantor, and duly registered on the 19th of December, 1860.

On the 26th of February, 1861, Childress qualified as trustee and gave bond, as required by law, with the defendant, T. O. Harris, and one James A. McMurry, who has since died and is not sued, as his sureties, in the penalty of $40,000, payable to the state of Tennessee and conditioned to "faithfully perform all the duties imposed upon him by law and the terms of the trust deed." On the 30th of January, 1862, Childress, as trustee, filed in the county court, as required by law, " an inventory of the property which has come into my possession and into the possession of other persons for me," by virtue of the deed. He sold some of the personal property in 1861 and 1862, and paid some debts and expenses out of the proceeds. After the war, and in the years 1865 and 1866, he made other sales of the realty, collected the proceeds of sale and some rents, and made disbursements. About the year 1869, he removed to St. Louis, Mo., but seems to have continued to act as trustee after his removal. At any rate, in the account furnished by him in his answer, he charges himself, under date of 20th September, 1869, with $200, the proceeds of the sale of a church pew.

About the 29th of March, 1870, Martin filed his petition in the county court against Childress, setting forth the foregoing facts, and stating that part of the trust property had not been disposed of, and part of the debts secured in the trust deed still remained unpaid ; that Childress had removed from the state, and asking that he be removed from the trusteeship, and that the court would appoint a successor in his room and stead, and "that the title to all the property belonging to said trust be divested out of the defendant and vested in his successor to be held in accordance with the terms and purposes of said deed of trust." On the 6th of July, 1870, the county court, by decree reciting the facts, appointed Nathaniel Baxter, Jr., trustee, who, however, declined to accept the trust, and, on the 15th of November,

1870, by supplemental decree reciting Baxter's refusal, appointed complainant Thompson in place of Baxter, " the successor of the said Thos. B. Childress, as trustee, under the deed of trust mentioned in the petition and previous decree ;" and further decreed that " all the right, title and interest of the said Childress in and to the property conveyed by said deed of trust, is hereby divested out of him and vested in the said Thompson as his successor, to whom the same will be delivered by the said Childress. The said Thompson, as the successor of said Childress, is hereby vested with all the rights and powers to which he is entitled under the statutes regulating the removal of trustees."

On the 30th of December, 1870, this bill is filed setting out the foregoing facts, and asking for an account of the trusteeship of Childress. The bill is so loosely drawn as to leave it doubtful whether Martin was intended to be a complainant or not. The style of the case at the head of the bill describes the complainant as John C. Thompson, trustee, etc. And the bill itself commences thus : " The bill of complainant, John C. Thompson, a citizen of Davidson county, Tenn., and trustee for the creditors of John W. Martin, also a citizen of Davidson county, Tenn., against," etc. And the prayer is for a decree against the said Childress and his security, T. O. Harris, for whatever amount may be found due from said Childress to your complainant, J. C. Thompson, trustee as aforesaid. The whole frame of the bill is based upon the right of Thompson as trustee to hold his predecessor to account. But, in the body of the bill, more than once, John W. Martin is designated as " your complainant," and occasionally the word complainant is used in the plural. And in the preparation of the cause, and in the argument of the counsel, Martin has been treated as a party complainant.

To this bill Childress and Harris filed answers, and on the 19th of February, 1872, a decretal order was entered by consent of counsel, with a reservation of the question raised by the demurrer of T. O. Harris, referring it to a special commissioner to report :

1st. What part of the trust property was sold by Childress and for what sum.

2d. What money he did receive, or should, by due diligence have received as trustee.

3d. The money paid out by him, to whom, and upon what indebtedness.

4th. What part of the property remains unsold.

5th. The amount due the creditors named in the deed.

6th. The balance, if any, due from Childress to John C. Thompson, trustee as aforesaid.

7th. Whether Childress is entitled to compensation, and what compensation for his services.

The only direction to the commissioner in this decree was the following : " In taking and stating the said account, it is decreed by the court, that the special commissioner charge the said Childress with all trust moneys that came, or should, by due diligence have come to his hands, as trustee, and credit him with all legal, just and proper expenditures and payments incurred and made by him in the legitimate execution of the trust undertaken and assumed by him."

On the 16th of May, 1873, the commissioner filed his report under this reference. In taking and stating the account with Childress, he has charged him with interest on the sums from the date the same were severally received, to the time of taking the account, and allowed him interest on his disbursements in like manner from the date of payment to the taking of the account. He has also allowed him interest on his charges for professional services, but not on his compensation, which he fixes at five per cent. on the sum of the original collections without interest. He finds the balance due from the trustee as of the 30th of April, 1873, of $4,153.72. He finds that there are several pieces of trust property unsold, and that the unpaid trust debts amount to $8,234.88. Both parties have excepted to the report.

The complainant excepts because the commissioner has allowed Childress compensation for services rendered as an attorney in and about the matters of the trust, and because

he has allowed him five per cent. commissions as trustee, when he should have allowed only the fees of a clerk and master in chancery for similar services under the Code, § 3664.

If the last exception is intended simply to question the authority of the commissioner to allow more than the fees of a clerk and master without special order of the court, the exception would be well taken. But if it was intended to state as a proposition that the allowance was fixed by the Code, § 3664, at the compensation of the clerk and master, so that no greater allowance could be allowed by law, the exception is not well taken. That section was modified, and the corresponding section 1976 was repealed by the act of 1860, ch. 34, which authorizes the court in which the trust is administered, to allow compensation exceeding that of the clerk and master, but in no case more than five per cent., if, in the opinion of the court, the character of the services rendered entitle him to more. As the exception is not put upon the general ground of want of merit in the character of the services, and as no such position was assumed in argument, the exception should be disallowed.

The first exception might have given me some trouble but for a recent decision of the supreme court. The weight of English authority undoubtedly is, that a trustee, who is also a solicitor or attorney, will not be allowed compensation for professional services as such in any matter touching the trust. It must be remembered, however, that the English decisions relate exclusively to taxable fees as costs. The question whether a trustee, who was also a barrister, could claim for services as counsel, could not arise in England, since, by the theory of their system, such compensation is purely gratuitous, and not the subject of a legal demand. In America, however, the inclination of the courts has been to extend the rule to such services. Perry on Trusts, § 432. Our own court has, however, settled the law otherwise in *Fulton* v. *Davidson*, 3 Heisk. 615. And in this they are sustained by *Wendell* v. *French*, 19 N. H. 210, and *Carmi-*

*chael* v. *Wilson*, 2 Molloy, Irish Rep. 537. In the latter case, Lord Manners, the Chancellor, is reported as saying that he so decides after consultation with Lord Eldon.

These exceptions of the complainants, although marked as filed, are not signed by the counsel, and I am not certain but they were withdrawn at the hearing. If not withdrawn, they must be disallowed.

The defendants' exceptions are more numerous. The first is that the clerk and master has charged the trustee with interest from the very day funds were received by him, whereas, the argument is, he should not be charged with interest unless he has used the funds, or allowed them to accumulate to an unreasonable amount, and kept them on hand an unreasonable time. The exception is well taken. The proper mode of taking the account of a trustee, unless the court shall, owing to the circumstances of the case, expressly direct otherwise, is to treat all the income of the trust received during the current year as unproductive, and to charge against the income of the current year all the disbursements, including the compensation or commissions of the trustee for the same year, and to strike a balance, upon which, as a general rule, interest is to be allowed, but in such a way as not to compound it. If, however, these balances are too small to invest, or for any other reason the trustee might equitably keep them on hand, interest will not be allowed upon them until the balances so accumulate as to be properly invested, or until the trustee ought to invest them. Perry on Trusts, § 468, and cases cited. This exception must, therefore, be sustained.

This case never having heretofore been heard on the merits, the complainants might have insisted on the hearing, that, under the facts as developed in the record, the commissioner would have been justified in charging interest in the mode adopted as a penalty; or, rather, that the court ought now to direct the account to be thus taken in punishment for the trustee's neglect to settle his accounts sooner. No such ruling has, however, been insisted on, nor do I think it could

be successfully urged. The proof is that the complainant, Martin, and the defendant, Childress, were brothers-in-law, and upon the most intimate terms, and that Childress was a trustee of Martin's selection. The circumstances demonstrate that Childress' conduct as trustee until the civil war caused a cessation of his functions, was entirely satisfactory to Martin certainly, and so far as the record shows, to the creditors also. The commissioner's report, moreover, shows that the trustee's receipts, up to January 11, 1862—erroneously put in the commissioner's report as July 11—when the last item was received, until the end of the war, amounted to $2,226.35, whereas his disbursements, to the same date, were $2,407.11, without allowing him any compensation for his services either as trustee or solicitor. The balance was, therefore, up to this period, largely in favor of the trustee, on which he should be allowed interest from January, 1862. Martin himself remained in possession of the property during the war. The errors in the accounts, according to the commissioner's report, began in 1866, and the balance then first turned against the trustee. Upon a careful examination of the evidence and of the accounts, I think that the trustee is entitled to the benefit of the general rule, as above laid down, until the balance is found to be against him to the extent of a thousand dollars. Whenever, upon re-casting the accounts as directed by this opinion, there is a balance of the *corpus* of the trust funds of one thousand dollars found against the defendant, the commissioner may calculate interest upon this balance, and upon the subsequent items of debit and credit as in the report under consideration.

The defendants' second exception is to a charge of $180, the proceeds of a lot of hogs which Martin says he paid to Childress in the winter of 1861–2. The deed of trust includes 50 head of hogs, and Martin deposes positively to the payment. The answer of Childress, in his deposition taken to rebut Martin's evidence, does not deny the payment positively. He only says that his books show no such payment, and if it had been made, it would have been entered on his

books, and he presumes he would have given Martin a receipt for it, as his practice was to give receipts for payments. The exception must be disallowed.

The third exception is to the charge of the discount made on the notes improperly sold by the trustee. The proof shows that these notes were given for land sold, and carried interest. The sale at the heavy discount made was certainly improvident, unless demanded by the exigencies of the trust. But the defendant's own accounts show that, at the dates of these sales, he had funds to meet the debts which he did ultimately pay. A state of facts might readily be conceived when such a sale, at even a larger sacrifice, would be absolutely necessary. But the burden of proof would be on the trustee to show the facts. This he has not done to the satisfaction of the court. And even if it were true, as insisted upon by defendant, that Martin consented to the sale, which he denies, yet he must have given his consent upon the belief that the exigencies of the trust demanded the sacrifice, and this belief must have been brought about by the representations of the defendant. Even if such representations were made in good faith, the sale would not be justified unless the exigency did really exist. The exception must, therefore, be disallowed.

The fourth exception is to the charge for rent of one of the houses included in the trust deed, occupied by the trustee and his family. The charge is clearly right, and the exception must be disallowed.

The fifth and sixth exceptions touching the compensation of the trustee are disallowed. But, under the directions above given, as to the mode of taking the account, the defendant will be entitled to have a credit for his compensation as earned. The result will be substantially the same as if the exceptions had been allowed.

The seventh exception that the commissioner has not allowed a credit for the loss of the trust funds by the failure of the Bank of Tennessee in February, 1862, must be disallowed. The defendant's own accounts show that his expen-

ditures up to that date were in excess of receipts, and he had no trust funds on hand.

The complainants will be entitled to recover of Childress the balance, if any, which may be found against him upon re-casting the accounts on the principles herein settled. He will be bound for the amount thus ascertained, because he has consented to the taking of the account, and raised no objection to the right of the complainants to recover. But he is entitled to be protected from liability to other parties to the extent of such recovery, by having the amount which he may be compelled to pay, applied, in the first instance, to the satisfaction of the debts secured in the deed of trust, and in the order therein indicated, and neither the present trustee nor the grantor will be allowed to receive any part of said funds until said debts are paid off.

It is obvious that the fiduciary relation which the defendant, Childress, occupies, is sufficient to sustain the recovery thus had, and fix his liability, without reference to any bond which he may have executed for the faithful discharge of his duties. But the liability of his co-defendant, Harris, depends entirely upon the bond, and if, for any reason, he be not bound on the bond, or, if he be bound thereby, but not to the complainants, or either of them, the action fails, and he must be discharged. It was in view of this fact, that the decree by consent which ordered the account, expressly reserved Harris' right to rely upon the matters of demurrer in his answer. The object of this reservation was to give this defendant the benefit of the defenses set up in his answer, even if, on taking the account, it should prove that there was a balance of debt against his principal. These defenses are that the complainant, Thompson, is not entitled, by virtue of his appointment as trustee, to sue his predecessor for official default, and that complainant, Martin, is not entitled to any recovery upon the bond upon the facts stated in the bill, or developed by the proof, nor at all against the defendant Harris, by reason of the circumstances under which he became bound on the bond. We will consider first the rights of the complainant, Martin.

The bond of the trustee, it will be recollected, is to "faithfully perform all the duties imposed upon him by law, and the terms of the trust deed. These terms are : " To sell and dispose of all the lands and tenements and personal property or so much thereof as may be necessary for the purpose of the trust; to collect and receive all the outstanding debts and claims, and, with the moneys arising therefrom, as well as from the sales of lands and personal property," after first deducting expenses, etc., to pay certain debts mentioned in the order of priority prescribed, and then all other just debts of the grantor equally. It will be noticed that there is no express provision in the deed authorizing the trustee to take possession of realty until required for the purposes of sale, and, therefore, nothing directly making the trustee responsible for rents. In the absence of such provisions, it is clear that the trustee would not be bound to active diligence in taking possession previous to a sale, nor, of course, is the duty imposed upon him of renting the property. His duty is to sell, not rent. Nevertheless, if he do actually receive rents by virtue of the trust, the law would impose upon him the duty of accounting for those rents. *Burr* v. *McEwen*, Bald. 154 ; *Griffin* v. *Macaulay*, 7 Grat. 579.

It will also be noticed that there is no provision for paying over of any surplus to the grantor, nor does the deed seem to contemplate that there will be any surplus, for it only provides for a sale, mortgage, or other disposition of so much of the property as may be necessary to pay debts. Nevertheless, the law, I think, would impose upon the trustee the duty of paying to the grantor any surplus remaining after satisfying debts. The trustee and his surety would, therefore, be bound upon the bond for rents actually received, and for any surplus after the debts and expenses are fully paid. Perry on Trusts, §§ 602, 595.

But the question still remains, to whom are they bound upon the bond? By the terms of the deed, they are bound to the creditors secured by the deed of trust. By the terms

of the deed, they are not expressly bound to the grantor at all, but they are bound to him by implication of law for any surplus, after the debts secured and all expenses are fully paid. If, then, there is no surplus, the complainant, Martin, has no right of action on the bond, whatever may be his rights against the trustee by virtue of his fiduciary relation. But the bill itself concedes, and the commissioner's report shows that there are unpaid debts secured by the deed largely in excess of any balance of funds in the hands of the defendant, Childress. As the suit now stands it is precisely as if Martin had brought a suit at law on the bond in the name of the state for his use, and had failed to aver in his declaration that there was a surplus after the payment of debts, or having made the averment had not only failed to show the fact, but had proved exactly the contrary. No one, I presume, would contend that he could recover in such a suit at law on that state of facts. Nor can he recover in this court in the absence of the creditors, unless, indeed, the new trustee can represent those creditors ; a point to be considered presently. The grantor himself has no right to represent them. For, it has been held that in a suit to enforce the trust by the creditors secured, the grantor is not even a necessary party, if the assignment is unconditional, and contains no provision for paying the surplus to such grantor. Perry on Trusts, § 595, citing *Hobart* v. *Andrews*, 21 Pick. 532. A still better reason is that the creditors, having no common interest with the grantor, would not be bound by the proceedings. Perry on Trusts, § 881.

It follows that this suit cannot be maintained on the bond, upon the facts stated in the bill and developed in the proof, in the name of the complainant, Martin. And it is very obvious that this was the opinion of the learned draftsman of the bill. For the bill is filed, not for any supposed surplus after the payment of debts, but for the benefit of the creditors, on the idea that the complainant, Thompson, as trustee, had the right to call the old trustee to account for their benefit. This point we will now proceed to consider.

The decree under which Thompson received his appointment, provides that "all the right, title and interest of the said Childress in and to the property conveyed by said deed of trust, is hereby divested out of him, Childress, and vested in the said Thompson and his successors, to whom the same will be delivered by said Childress. The said Thompson, as the successor of said Childress, is hereby vested with all the rights and powers to which he is entitled under the statutes regulating the removal of trustees."·

The first clause thus quoted, manifestly vests Thompson with the title only "to the property conveyed by the deed of trust." Literally, this would mean only such of the property conveyed in the deed as remained in kind. Nevertheless, I am inclined to think it would pass the title to any property or funds which could be identified with the trust. Money, the proceeds of trust property, and specially deposited in bank to the credit of the trust, would, I think, pass. For such assets would be within the spirit of the decree. This bill is not shaped with any such view, nor does the evidence disclose any such fund. The bill simply seeks an account, and raises sharply the issue whether the successor in the trust can call his predecessor to account.

It is an elementary principle that the discharge of a trustee, upon the appointment of another trustee in his place, does not of itself release the trustee from responsibility for his past conduct to his *cestui que* trust, who may still inquire into his administration prior to his discharge. Perry on Trusts, § 922, and cases cited. The continuance of this liability is incompatible with the existence of liability for the very same administration to any other party, unless such other party, by positive statute, is empowered to hold him to account for the benefit of the *cestuis que* trust. For, if it were otherwise, a person would be liable to two different parties, claiming in different rights, for one and the same act at one and the same time.·

But, it is insisted, the positive statutory provision required is found in § 3662 of the Code, which reads thus: "The

court shall divest and vest title to the property, enforce the delivery thereof to the new trustee, and the payment of money found due upon the statement of accounts, according to the course of the court of chancery."

Without pausing to inquire whether the last clause of this section, as contended for by the defendants, was not intended to apply only to cases of the resignation of trusts, in which case special provision is made for enabling the old trustee to pass his accounts, and not to removals where there is no such provision, it will be sufficient to observe that it only, in its terms, applies where an account has actually been taken by the court making the removal and appointing the successor. If, says the statute, any money is found due upon the statement of accounts, its payment shall be enforced according to the course of the court of chancery. This means, no doubt, primarily in the mode in which the court of chancery enforces payment, It also implies, fairly, that the money should be paid as the court of chancery would direct, which would be to the *cestuis que* trust, not the new trustee.

Be this as it may, no account was, in this instance, taken when the new trustee was appointed. And we are compelled to fall back upon the naked proposition, whether a new trustee, by virtue of his appointment, can, without any express statutory provision to that effect, sue upon the bond of his predecessor for a breach thereof.

Upon principle, it would seem clear that he could not. For his own commission is simply to take charge of the trust assets remaining unadministered, and his duty would necessarily be confined to those assets. He is not liable for the delinquencies of his predecessor, and can have no right of action based on that ground. Moreover, the bond of the old trustee was given for the benefit of the *cestuis que* trust, and they alone would have a right to sue for a breach. And, as we have seen, the appointment of a new trustee does not deprive them of the right to call the old trustee to account. It may be added, that if the new trustee could sue on the

bond of his successor, that bond must be considered as made upon condition to account to the trustee himself, or his successor, which would be absurd.

The nearest analogy in the law to the case before us, is that of an administrator *de bonis non*, and his right to sue his predecessor. Upon this subject, the decisions of our supreme court are not quite as clear and consistent as an inferior tribunal would like to find them. In *Shackleford* v. *Runyan*, 7 Hum. 141, it was held that an administrator *de bonis non* might call his predecessor in the administration to account in a court of chancery, while in *Stott v. Alexander*, 2 Sneed, 650, 654, there is a *dictum* to the contrary. On the other hand, in *Thomas* v. *Stanley*, 4 Sneed, 411, it was held that an administrator *de bonis non* could not maintain covenant on the administration bond of his predecessor, which decision is referred to and recognized in *Reeves* v. *Steele*, 2 Head, 647. The latest decisions, and the weight of authority are against the power to sue, at any rate upon the bond of the predecessor; and it is a suit upon the bond that is now before us.

The result is, that the defendant, Childress, is liable to account under this bill, he having submitted to the jurisdiction of the court and consented to account, But the court will protect him from further liability for the amount found against him, by directing the proceeds to be held for the benefit of the creditors secured in the deed of trust, and in the order in which they are secured, and paid to them upon proper application, and not to be paid to either of the complainants until such creditors are satisfied. Neither of the complainants is entitled to recover on the bond—Martin, because he does not claim or show a surplus—and Thompson, because not authorized to sue on the bond. The bill will be dismissed, so far as Harris is concerned, with costs. The complainants will pay the costs in the first instance, but may have their decree against Childress for all the costs except those arising from making Harris a party.

The record shows that Thompson is dead, and that Ewing

has been appointed his successor. The decree will, of course, be according to the facts.

NOTE.—This case, upon appeal, was affirmed so far as it was the bill of Martin, and the court, without undertaking to pass upon the rulings of the Chancellor upon the bill considered as the bill of the new trustee, which, they added, were probably correct, dismissed the bill upon the ground that the proceedings in the county court appointing the new trustee, were void. This point was not made in the pleadings or in the argument, either in the chancery or supreme court, the defendants' counsel probably considering the consent decree for the account, as an estoppel. The Chancellor so treated it, and was to that extent in error.